## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **SUNGDO ENG USA, INC.,** )<br><br>**Plaintiff,** )<br><br>**v.** )<br><br>**HYOUNGWON INC., HYOUNGWON**<br>**E&C AMERICA, INC., JU HO LEE,**<br>**and HAESUNG JANG,** )<br><br>**Defendants.** ) | **CASE NO.**<br>_____<br><br>**JURY TRIAL DEMANDED** |

## VERIFIED COMPLAINT

Plaintiff Sungdo ENG USA, Inc. ("Sungdo USA"), by and through its undersigned attorneys, for its Verified Complaint against Hyoungwon Inc. ("Hyoungwon Korea"), Hyoungwon E&C America, Inc. ("Hyoungwon USA," and, with Hyoungwon Korea, "Hyoungwon"), Ju Ho Lee ("J. Lee"), and Haesung Jang ("Jang"), alleges as follows:

## NATURE OF ACTION

1.       This is an action for damages and injunctive relief arising out of J. Lee's and Jang's breaches of their fiduciary duties and Hyoungwon's inducement of those breaches, J. Lee's and Jang's breaches of their employment agreements with Sungdo USA, and Defendants' tortious interference with contract, conspiracy, and

misappropriation of trade secrets in violation of the Defend Trade Secrets Act and Georgia Uniform Trade Secrets Act.

2.    Sungdo USA is a Georgia-based subsidiary of South Korean-based Sungdo Engineering & Construction Co. Ltd. ("Sungdo Korea," and, collectively with Sungdo USA, "Sungdo"), a leader in the industrial engineering and construction business.  Sungdo USA employed J. Lee and Jang in Georgia in senior executive positions as, respectively, President and Finance/HR Manager.  In these positions, J. Lee and Jang had wide-ranging responsibilities for managing Sungdo's business throughout the United States.  Accordingly, Sungdo entrusted J. Lee and Jang with its most sensitive trade secrets and other confidential business information with the expectation that J. Lee and Jang would act at all times with the utmost good faith and in the best interests of the company.

3.    Yet despite their contractual and other legal duties to Sungdo, J. Lee and Jang, ***while still employed by Sungdo***, deceptively conspired with Sungdo's rival Hyoungwon to set up a subsidiary of Hyoungwon to compete directly with Sungdo in Georgia with the use of Sungdo's trade secrets and the other information and assets that Sungdo entrusted to them.  In furtherance of their conspiracy, Defendants raided Sungdo USA's workforce, purported to void (without authorization) Sungdo USA's restrictive covenant agreements with its poached employees, intentionally suspended pursuing business opportunities on behalf of

Sungdo USA (including refraining from pursuing a multi-million dollar construction project for which Sungdo USA had prepared a confidential bid), and stole Sungdo USA's trade secrets (including taking Sungdo USA's bid for the multi-million dollar construction project and then submitting the same bid on behalf of Hyoungwon).

4.      Defendants' misconduct constitutes egregious violations of their contractual, statutory, and common law obligations to Sungdo USA and has caused, and is causing, immediate irreparable harm to Sungdo USA.  If not restrained by this Court, Defendants will continue their unchecked scheme to steal Sungdo USA's business through their pillaging of Sungdo USA's workforce, usurpation of its business opportunities, and misappropriation of its trade secrets and other confidential and/or proprietary information.   Accordingly, Sungdo USA seeks injunctive relief to prevent this unfair competition, as well as the costs of this action, including its reasonable attorneys' fees, and damages for the harm already caused to its business by Defendants' misconduct.

## PARTIES

5.      Plaintiff Sungdo ENG USA, Inc. is a Georgia corporation with its principal place of business at 4318 Brogdon Place Cove, Suwanee, Georgia 30024. Sungdo USA is registered to do business in the State of Georgia.

6.      Defendant Hyoungwon Inc. is a South Korean corporation with its principal place of business at 1007, World Tower 10, 1204, Gyeongui-ro, Paju-si,

Gyeonggi-do, 10896, Republic of Korea.  Upon information and belief, Hyoungwon regularly conducts business in the State of Georgia and throughout the United States through its U.S. affiliates, Texas-based Hyoungwon ENG USA Inc. and Defendant Hyoungwon E&C America, Inc.

7.      Defendant Hyoungwon E&C America, Inc. is a Georgia corporation with its principal place of business at 1325 Satellite Blvd, Suite 1202, Suwanee, Georgia 30024.  Hyoungwon is registered to do business in the State of Georgia. Hyoungwon's registered agent for service of process is Defendant Jang.   Upon information and belief, Hyoungwon is a subsidiary of Hyoungwon Korea.

8.      Defendant Ju Ho Lee is an individual citizen of South Korea who is resident in the United States on a work visa and resides at 293 Reynoldston Way, Suwanee, Georgia 30024.

9.      Defendant Haesung Jang is an individual citizen of South Korea who is a permanent resident of the United States and resides at 840 Riverdance Dr. NW, Suwanee, GA 30024.

## JURISDICTION AND VENUE

10.   This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 based on Sungdo USA's claim under the Defend Trade Secrets Act, 18 U.S.C. § 1832 *et seq.*, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the remaining claims.

11.   This Court has personal jurisdiction over Hyoungwon Korea under Fed. R. Civ. P. 4(k)(1)(A) and the Georgia long arm statute, O.C.G.A. § 9-10-91, because it transacts business in Georgia and committed tortious acts within Georgia as alleged in this Complaint.  Moreover, this Court can exercise personal jurisdiction over Hyoungwon Korea because Hyoungwon Korea has purposefully availed itself of the privilege of conducting activities within Georgia and because Sungdo USA's claims against Hyoungwon Korea arise out of or relate to Hyoungwon Korea's contacts with Georgia.

12.   This Court has personal jurisdiction over Hyoungwon USA because it is a Georgia corporation with a principal place of business in this District, because it can be served in this District through Defendant Jang (its registered agent for service of process), and because the events giving rise to this matter occurred in this District.

5

13.    This Court has personal jurisdiction over J. Lee and Jang because they reside in and can be personally served in this District and because the events giving rise to this matter occurred in this District.

14.    Venue is proper in this District and Division under 28 U.S.C. § 1391(b) because all Defendants reside within the Atlanta Division of the Northern District of Georgia and because a substantial part of the events or omissions giving rise to the claims in this action occurred in the Atlanta Division of the Northern District of Georgia.

## FACTUAL ALLEGATIONS

### A.    *Sungdo's Legitimate Business Interests*

15.    Sungdo is a global leader in the industrial construction and engineering business, with a particular focus on construction of industrial plants and other related facilities.  Through expertise developed over the course of decades, Sungdo has developed specialized knowledge and experience in biotechnology and in engineering and developing semiconductors, display projects, solar cells, and more.

16.    Sungdo operates in a highly competitive industry in which its success is a result of years of hard work and ingenuity.  Sungdo's confidential, proprietary, and trade secret information, relationships with customers, and administrative and operational acumen allow it to maintain market share and thrive in this extremely competitive industry.

17. Most of the leading semi-conductor and battery manufacturers are Korean companies. Sungdo has an unparalleled knowledge and understanding of Korean companies' needs and their technologies. When such companies decide to build plants in the United States and bring their equipment from Korea, Sungdo can provide superior service through its understanding of the clients' equipment and its understanding of how to make the clients' equipment operate effectively and efficiently within their plant's MEP (mechanical, electrical, and plumbing) system. This necessitates proper project management skills, including project planning, accurately estimating costs, knowledge of subcontractors, and keeping everything on schedule.

18. Accordingly, Sungdo's business is profitable by virtue of its expertise and development of its own technologies and know-how in high-tech general construction such as semiconductor, high-efficiency and high-capacity lithium-ion battery industries that require expertise in building, installing, and maintaining cleanrooms free of any contaminants. Sungdo's know-how is built on years of experience and allows its clients to entrust Sungdo to take the project from the beginning to the end.

19. For example, Sungdo utilizes its knowledge in planning, which includes budgeting, compiling estimation data, forecasting a project schedule, procurement, selection of top-notch subcontractors with the right skills and right

price point; engineering; installation; operation; and maintenance of high-tech facilities, all of which is driven by information that is regarded as highly confidential by Sungdo and its competitors. Sungdo has developed and maintained its competitive position in the market in large part because of these trade secrets and other confidential and proprietary information, which Sungdo has expended substantial time, effort, and expense in developing and which Sungdo takes significant measures to safeguard from public dissemination.

20. Moreover, Sungdo maintains its competitive advantage and position in the marketplace through its investment in customer relationships. In this industry, the opportunity to bid on construction projects largely depends on relationships and reputation, as customers decide which contractors can select bids based on their relationships and reputations. Accordingly, Sungdo also expends substantial time, effort, and expense developing trade secrets and other confidential business information related to its customers and potential customers. Such information includes, but is not limited to, customer and prospect contact information; confidential information about bidding opportunities; internal analyses of market position, threats, and opportunities; strategic plans for bidding on construction projects; drafts of bids for construction projects; strategic sales and marketing plans; and other business methods, strategies, and plans.

21.     Sungdo's trade secrets and other confidential business information are of great value to Sungdo, and such information would give any competitor who improperly acquired it an unfair competitive advantage by, among other things: (a) not having to expend the time and resources to develop the trade secret information as Sungdo has done; (b) being able to quickly and effortlessly identify business opportunities and develop strategies to outbid Sungdo and thereby diminish Sungdo's competitive advantage; and (c) making it alert both to profitable initiatives that should be pursued and to unsuccessful practices that should be avoided.  Such know-how affects both current and future opportunities because, once a competitor knows how Sungdo operates and bids on projects, it can undercut Sungdo's future bids with such knowledge.

22.     Sungdo's trade secret and other confidential business information is not generally known in the industry and is valuable because Sungdo derives economic value from the information not being publicly available.

23.     Sungdo takes numerous measures to protect the confidentiality of  its trade secrets and other confidential business information, including by, among other safeguards, storing information on secure computer systems, requiring employees to keep draft bids and other business and customer information confidential, password protecting computers, limiting access to information, and requiring employees to sign restrictive covenant agreements liked those signed by Lee and Jang.

24.   In addition, to protect its trade secrets and other legitimate interests, Sungdo USA maintains, and consistently enforces, policies in its Employee Handbook that are intended to prevent loss of its trade secrets through conflicts of interest like those present in this case.

25.   For example, Sungdo USA's Outside Employment Policy provides: "The Company expects an employee's work for the Company to take precedence over any outside employment engaged in by an employee. Employees must get prior written approval from the Company before engaging in other employment. Should the Company, in its sole discretion, determine that the outside employment interferes with or is otherwise incompatible with employment with the Company, the employee may be asked to choose between the jobs. Employees may not engage in any private business or activity while on Company work time or at Company workplaces."

26.   Likewise, Sungdo USA's Conflict of Interest Policy provides: "Employees must notify the Company in writing of any matter in which they, their family members, or their business associates have an economic interest and in which they must act on behalf of the Company. If the Company determines that a potential conflict or appearance of conflict of interest exists, the matter will be reassigned to another employee."

27.     J. Lee and Jang were and are well-aware of these policies and, indeed, were responsible for implementing and enforcing them during their employment with Sungdo USA.

### B.     J. Lee's Employment With Sungdo and Access to Sungdo's Trade Secrets and Other Highly Confidential Information

28.     J. Lee began his employment with Sungdo Korea on December 1, 2005 as an assistant manager and steadily rose through the ranks of the company's management and executive leadership teams.

29.     In 2019, Sungdo Korea formed Sungdo as its U.S. subsidiary in order to grow the organization's share of the U.S. market.

30.     Because of their expectation that Sungdo USA would operate as a stand-alone business within the U.S. market, Sungdo Korea's management team believed that Sungdo USA needed a president whom they could trust to operate the business with integrity and competence and with little day-to-day oversight. Accordingly, because of his prior service to Sungdo Korea and his good reputation within the organization, Sungdo Korea selected J. Lee to serve as Sungdo USA's president.

31.     J. Lee began his tenure as president of Sungdo USA effective December 1, 2019 and served in that role throughout the remainder of his employment. During his tenure as president of Sungdo USA, J. Lee reported directly to the Sungdo Korea

management team but was paid through Sungdo USA and was physically based out of Sungdo's headquarters in Suwanee, Georgia.

32.    As president of Sungdo USA, J. Lee was responsible for managing the company's overall operations and resources, providing leadership and strategic direction for the business to ensure profitable growth, developing, implementing, managing, and executing Sungdo USA's long-term and short-term business strategies, identifying and strategically prioritizing construction projects in the U.S. market on which to bid, overseeing the bid process (including developing strategies to win bids), serving as the public face of Sungdo in the U.S. market, and acting as the main (and sometimes the sole) point of communication between the Sungdo Korea management team and Sungdo USA's team.  J. Lee was also responsible for enforcing all the company's policies, including its Outside Employment and Conflict of Interest Policies.

33.    To enable J. Lee to perform these duties, Sungdo provided J. Lee with unfettered access to virtually all of Sungdo USA's most valuable trade secrets and other confidential business information.  Indeed, as the top executive entrusted with the overall management of Sungdo USA, J. Lee was not only privy to Sungdo's trade secrets but was personally responsible for developing Sungdo's most sensitive and confidential business strategies, to which only a handful of executives were privy.

34.     Because of his nearly unfettered access to Sungdo USA's most valuable trade secrets and other confidential business information, J. Lee was required to enter into employment agreements on an annual basis that set out the terms of his employment as president of Sungdo USA, including, among other terms, his obligation to maintain the confidentiality of Sungdo's trade secrets and other confidential business information.

35.     For example, on March 1, 2023, J. Lee executed his final Employment Agreement, a true and accurate copy of which, with an English translation, is attached as **Exhibit A** (the "J. Lee Employment Agreement").[1]   The J. Lee Employment Agreement, which was executed and to be performed in Georgia, contains provisions regarding protection of Sungdo's trade secrets and other confidential business information.

36.     Specifically, Section 4(b) and (c) of the J. Lee Employment Agreement contains covenants that, translated into English, read as follows:

> (b)     Employee promises not to disclose the company's confidential trade secret (business and operation-related, etc.) acquired during his or her employment to a third party.  If the company suffers any financial damage due to the disclosure of confidential trade secret, employee shall be subject to disciplinary action and shall be liable for damages to the company.

---

[1] Because the J. Lee Employment Agreement is written in Korean, an English translation is attached to this Complaint for the Court's convenience.

(c)     For 5 years after the date of separation of employment from the company, employee shall not disclose confidential trade secret information acquired during his/her employment.      If the company suffers financial harm as the result of disclosure of company's trade secret, employee will be subject to discipline and shall be liable for Company's damages.

37.     In addition, on the second page of the J. Lee Employment Agreement, J. Lee entered into a separate covenant that is entitled (as translated into English) "Confidential Trade Secret Agreement" and that further details J. Lee's obligations to protect Sungdo's trade secrets and other confidential business information.

38.     The "Confidential Trade Secret Agreement" portion of the J. Lee Employment Agreement provides (as translated into English) that "[t]he purpose of this Agreement is to keep confidential trade secrets acquired while working for the company and to stipulate mutual trust between the Company and the employee to prevent disclosing company trade secrets, and to prevent any actions that may cause damage to the company."

39.     The "Confidential Trade Secret Agreement" portion of the J. Lee Employment Agreement clarifies that "trade secrets" include (as translated into English) "all information related to business, such as management information, customer information, order and transaction information, unique technology, and programs accompanying meetings, business performance, and sales activities, as well as plans and reports generated during business performance, including all

tangible and intangible technical and sales information with recognized independent property value, such as research books, papers, presentations, research data, and sales data."

40.    The "Confidential Trade Secret Agreement" portion of the J. Lee Employment Agreement further provides (as translated in English) that:

(1)    Upon termination of employment, the employee shall return to the company all files, documents, records, notes and any other names, regardless of whether they are original or copies, as long as they are related to the company's trade secret.

(2)    After termination of employment (including probationary period), the employee shall not use the trade secrets acquired during the employment with the company in manner, including providing them to a third party, or engage in any other act of disclosure.

(3)    Employee shall delete or otherwise destroy trade secrets held in his or her personal PC, cloud service, storage media, printed output, etc. in a form that cannot be recovered.

41.    Moreover, the "Confidential Trade Secret Agreement" portion of the J. Lee Employment Agreement provides (as translated): "If the employee violates any of the above provisions, employee shall be subject to all civil and criminal liabilities in accordance with relevant laws and regulations.  If the disclosure of company trade secret results in any damages to the company, the employee shall compensate all damages promptly."

### C.   Jang's Employment With Sungdo and Access to Sungdo's Trade Secrets and Other Highly Confidential Information

42.    Jang began his employment with Sungdo USA on July 1, 2021 as Finance and HR Manager and remained in that role for the duration of his employment with Sungdo USA.  At all times during his employment with Sungdo USA, Jang worked in Sungdo USA's headquarters in Suwanee, Georgia.

43.    As Finance and HR Manager, Jang reported to J. Lee and was a senior member of Sungdo USA's leadership team.  In that role, Jang was responsible for managing and overseeing the daily operations of the company's accounting department, monitoring and analyzing accounting data, producing financial reports or statements, performing other accounting and finance department duties as assigned, developing and implementing HR strategies and initiatives aligned with the overall business strategy, bridging management and employee relations by addressing demands, grievance, and other issues, and managing the recruitment and selection process.  Like J. Lee, he was also responsible for enforcing all the company's policies, including its Outside Employment and Conflict of Interest Policies.

44.    Like J. Lee, Jang also had extensive access to Sungdo USA's most valuable trade secrets and other confidential business information, which Sungdo entrusted to him to enable him to perform his job duties.  For example, Sungdo entrusted Jang with highly confidential information regarding its hiring and related

processes, practices, and policies, as well as its financial structure, all of which Jang has now replicated at Hyoungwon. Moreover, Sungdo entrusted Jang with confidential personnel-related information that provides him with knowledge regarding Sungdo USA's employees, such as compensation information regarding Sungdo USA's most technically-knowledgeable employees. In the hands of a competitor like Hyoungwon, such knowledge could be used to poach Sungdo USA's workforce.

45.    Because of his access to Sungdo USA's trade secrets and other confidential business information, Sungdo USA required Jang to enter into an Employee Non-Competition, Confidentiality and Non-Solicitation Agreement on an annual basis that set out various covenants to protect Sungdo's trade secrets and other legitimate business interests.

46.    For example, on April 1, 2023, Jang executed his final Employee Non-Competition, Confidentiality and Non-Solicitation Agreement, a true and accurate copy of which is attached as **Exhibit B** (the "Jang Non-Competition Agreement").[2]

47.    Jang executed the Jang Non-Competition Agreement in Georgia, and the agreement was performed in Georgia.

---

[2] Because the J. Lee Employment Agreement is written in Korean, an English translation is attached to this Complaint for the Court's convenience.

48.     Section 3 of the Jang Non-Competition Agreement contains a non-competition covenant that provides as follows:

> You agree that at no time during the term of your employment with the Company will you engage in any business activity which is competitive with the Company nor work for any company which competes with the Company.  For a period of one (1) year immediately following the termination of your employment, you will not, for yourself or on behalf of any other person or business enterprise, engage in any business activity which competes with the Company within 200 miles of the facility in which you were engaged.

49.     Section 4 of the Jang Non-Competition Agreement contains an employee and independent contractor non-solicit covenant that provides as follows:

> During the term of your employment, and for a period of one (1) year immediately thereafter, you agree not to solicit any employee or independent contractor of the Company on behalf of any other business enterprise, nor shall you induce any employee or independent contractor associated with the Company to terminate or breach an employment, contractual or other relationship with the Company.

50.     Section 5 of the Jang Non-Competition Agreement contains a customer non-solicit covenant that provides as follows:

> For a period of one (1) year following the termination of your employment and your relationship with the Company, you shall not, directly or indirectly, disclose to any person, firm or corporation the names or addresses of any of the customers or clients of the Company or any other information pertaining to them.  Neither shall you call on, solicit, take away, or attempt to call on, solicit, or take away any customer of the Company on whom you have called or with whom you became acquainted during the term of your employment, as the direct or indirect result of your employment with the Company.

51.     In Section 6 of the Jang Non-Competition Agreement, Jang acknowledged that Sungdo USA "will suffer irreparable harm" if he breaches his obligations under the agreement and that "monetary damages will be inadequate to compensate the Company for such a breach.  Therefore, if [he breaches] any of such provisions, then the Company shall be entitled to injunctive relief, in addition to any other remedies at law or equity, to enforce such provisions."

### D.     J. Lee and Jang Set Up and Begin Working for Hyoungwon While Still Employed by Sungdo USA

52.     Hyoungwon Korea is a direct competitor of Sungdo and, like Sungdo, is engaged in the industrial construction and engineering business.  Also like Sungdo, Hyoungwon Korea touts its expertise in biotechnology and its experience in semiconductors and display projects.  Unlike Sungdo, however, Hyoungwon Korea did not have significant operations in the U.S. market until earlier this year and did not have a U.S. subsidiary until it established Texas-based Hyoungwon ENG USA Inc. in March 2023, followed shortly thereafter with creation of Defendant Hyoungwon USA on May 31, 2023.

53.     Upon information and belief, before establishing its U.S. subsidiaries, and perhaps months before doing so, Hyoungwon Korea's executive team began soliciting J. Lee to join their to-be-established U.S. business in order to exploit his relationships with Sungdo USA's workforce and his knowledge of Sungdo's trade secrets and other confidential business information – and particularly his detailed

knowledge of Sungdo's business strategies and bids – with the specific goal of unlawfully replicating Sungdo's success in the U.S. market and growing its market position at the expense of Sungdo.

54. Also upon information and belief, Hyoungwon solicited and hired J. Lee with knowledge of his continuing obligations to Sungdo. Indeed, unbeknownst to Sungdo, Hyoungwon hired Lee as its CEO by as early as June 2023 (if not earlier), while he was still employed by Sungdo USA, and J. Lee began working for Hyoungwon in this role – either officially or non-officially – for over six weeks while he was still employed by Sungdo USA.

55. Moreover, upon information and belief, while still employed by Sungdo USA, J. Lee began soliciting Jang to join Hyoungwon, and both J. Lee and Jang began conspiring with Hyoungwon to pirate Sungdo USA's workforce in blatant violation of their continued obligations to Sungdo.

56. For example, on June 16, 2023, during business hours and while he was still employed by Sungdo USA, J. Lee, using his Sungdo-issued laptop, sent an email from his personal email (vranus3@naver.com) to an individual with an email address outside of Sungdo's email domain (1972kjh2000@hanmail.net) that, upon information and belief, was a senior executive at Hyoungwon Korea. A copy of that email, with English translation, is attached as **Exhibit C**.

57.    In his June 16 email, J. Lee informed the recipient of his plan to hire

away three other Sungdo USA employees, including Jang.  Specifically, J. Lee wrote

(as translated into English):

> Dear Mr. CEO,  This is Ju Ho Lee.
>
> I'm sending you the attached resumes of employees, so please refer to it for work.
>
> Planning to proceed with Haesung Jang on July 1st, Dong Gyu Lee on September 1st, and Kyungmi Park on October 1st.
>
> Thank you.

58.    Consistent with J. Lee's plan to hire Jang and other Sungdo USA

employees for Hyoungwon, on June 16, 2023, the same day that J. Lee sent his email,

Jang submitted his resignation to Sungdo USA, effective June 30.

59.    Jang did not disclose that he was leaving to join a competitor, and in

the weeks between his notice and his last day of employment with Sungdo USA,

Jang immediately began performing his job duties for Hyoungwon while still

employed by Sungdo USA.

60.    For example, on June 19, 2023, Jang sent an email to an individual

named "Santos Kim" (with copy to J. Lee) submitting a commercial lease

application on behalf of Hyoungwon.  A copy of that email, with English translation,

is attached as **Exhibit D**.

61.    The next day, on June 20, 2023, Jang sent another email to "Santos

Kim" with a copy of J. Lee's Georgia driver's license and "proof of funds" in relation

to Hyoungwon's commercial lease application. A copy of that email, with English translation, is attached as **Exhibit E**.

62.     By June 21, 2023, both J. Lee and Jang (who at this point were both still employed by Sungdo USA) already had Hyoungwon email addresses.  On June 21, Jang, through his Hyoungwon email address ([haesung@hyoungwon.com](mailto:haesung@hyoungwon.com)), emailed J. Lee via his Hyoungwon email address ([juho@hyoungwon.com](mailto:juho@hyoungwon.com)) and a sales person from an Atlanta-area car dealership regarding purchase of a luxury Hyoungwon company vehicle for J. Lee's use.  A copy of that email is attached as **Exhibit F**.

63.     On June 26, 2023, Hyoungwon USA filed its Annual Registration with the Georgia Secretary of State, listing J. Lee as its CEO and CFO and Jang as its Secretary – despite the fact that both J. Lee and Jang were still employed by Sungdo USA.  A copy of Hyoungwon's corporate registration is attached as **Exhibit G**.

64.     The same day, Jang, using his Hyoungwon email address, emailed J. Lee, at his Hyoungwon email address, an estimate for the initial costs of setting up Hyoungwon's operations (i.e., the same type of finance and accounting work that Sungdo USA was paying him to perform for Sungdo USA at the very same time.) A copy of that email, with English translation, is attached as **Exhibit H**.

**E.    *Jang Terminates His Employment with Sungdo USA
and Lee, Without Authorization, Purports to Release
Jang From His Non-Compete Agreement***

65.    Pursuant to his prior resignation notice, June 30 was Jang's last day at Sungdo USA.

66.    On Jang's last day of employment with Sungdo USA, J. Lee, without approval or authorization, purported to release Jang from his non-compete and non-solicitation obligations by entering into an "Amendment to Employee Non-Competition, Confidentiality and Non-Solicitation Agreement," which J. Lee signed, purportedly on behalf of Sungdo USA.   A copy of the purported "Amendment to Employee Non-Competition, Confidentiality and Non-Solicitation Agreement" is attached as **Exhibit I**.

67.    J. Lee lacked authority to release Jang from his non-compete and non-solicit obligations to Sungdo USA and engaged in this action without the knowledge or approval of Sungdo.  Indeed, rather than acting on behalf of Sungdo USA (as he purported to do in signing the "Amendment to Employee Non-Competition, Confidentiality and Non-Solicitation Agreement"), J. Lee was in fact acting on behalf of Hyoungwon.

68.    J. Lee's motive for attempting to release Jang from his non-compete and non-solicit obligations is clear: knowing that Hyoungwon had already hired Jang

as the corporate Secretary for Hyoungwon USA, J. Lee wanted to pave the way for Jang to compete against Sungdo in blatant violation of his obligations.

69.     Moreover, to clear the path for J. Lee and Jang to pirate away other Sungdo USA employees that they planned to hire at Hyoungwon, J. Lee signed purported amendments to other employees' Non-Competition, Confidentiality and Non-Solicitation Agreements in which J. Lee purported to waive their obligations to Sungdo USA.   Upon information and belief, Jang prepared the purported amendments for J. Lee's signature.  In addition to the purported amendment to the Jang Non-Competition Agreement, J. Lee purported to waive the restrictive covenants of three other employees – all of whom eventually either joined J. Lee and Jang at Hyoungwon or indicated that they intended to do so.

**F.     J. Lee, Still Employed by Sungdo USA, Continues to Secretly Work for Hyoungwon and Continues to Conspire with Jang**

70.     For the next month, J. Lee still continued to serve as Sungdo USA's President while secretly serving in the same role for Hyoungwon USA.

71.     For example, on July 10, Jang emailed J. Lee requesting his approval of various issues related to Hyoungwon's operations, including transfer of J. Lee's work visa to Hyoungwon USA, quotes for group health insurance, and documentation regarding Hyoungwon Korea's initial capital investment of half a

million dollars in Hyoungwon USA and its 100% equity interest in Hyoungwon USA. A copy of this email, with English translation, is attached as **Exhibit J**.

72.     On July 11, Jang emailed J. Lee a spreadsheet reflecting Hyongwon USA's expenses, including, among others, expenses for the purchase of a luxury company vehicle for J. Lee's use). A copy of this email, with English translation, is attached as **Exhibit K**.

73.     Then on July 17, Jang again emailed J. Lee – this time with a report on his interviews of potential accountant firms for Hyoungwon USA and his recommendations to J. Lee, as CEO of Hyoungwon USA, for selection of the accounting firm. A copy of this email, with English translation, is attached as **Exhibit L.**

### G.     *J. Lee Terminates His Employment with Sungdo USA and Defendants Steal Sungdo's Bid for a Multi-Million Dollar Construction Project*

74.     On July 17, 2023, J. Lee submitted his resignation to Sungdo USA, with an effective termination date of July 31. He did not disclose the fact that he was leaving Sungdo USA to become CEO of Hyoungwon USA – nor, indeed, that he already was working in that role and had been doing so for over a month.

75.     J. Lee worked his last day at Sungdo USA on July 31 – but not before stealing Sungdo's bid for a multi-million dollar construction project for a potential customer in Cartersville, Georgia ("Customer A").

76.     Customer A had approached Sungdo USA about the construction project (which involved construction of a new plant) several months before and had invited Sungdo USA to submit a bid for the project.   Because the project was consistent with Sungdo USA's strategic priorities, the Sungdo Korea executive team instructed J. Lee to pursue the opportunity for Sungdo USA.

77.     Accordingly, Sungdo USA prepared a confidential draft bid for the construction project following extensive analyses, in which both J. Lee and another Sungdo USA employee, Yongjin Lee ("Y. Lee") were extensively involved.   At the time, Y. Lee was Sungdo USA's Director of Public Affairs and, like J. Lee and Jang, had access to trade secrets and other confidential information entrusted to him by Sungdo.

78.     Sungdo USA submitted its bid for the Cartersville project on March 22, 2023.   Based on its prior communications with Customer A, and the fact that Customer A had specifically invited Sungdo USA to bid on the project, Sungdo USA believed that it had a strong likelihood of wining the bid.   Inexplicably, however, all communication from Customer A came to a sudden stop.

79.     When asked why communications from Customer A suddenly stopped, J. Lee falsely reported to Sungdo USA's Director of Finance, Seokjoo Yoon, that the project was not going forward and that Customer A had withdrawn its investment

in the plant.   J. Lee later gave Yoon a different explanation and claimed that Sungdo Korea's executive team had told him not to pursue the project.

80.    In reality, neither of these stories were true.   Upon information and belief, unbeknownst to Sungdo Korea's leadership team, J. Lee informed Customer A that he planned to join Hyoungwon and then intentionally put a stop to Sungdo USA's bid for the construction project because he secretly planned to submit the same bid on behalf of  Hyoungwon.

81.    Indeed, Sungdo USA has only recently  learned (through a forensic examination of company devices issued to J. Lee) that on July 25 – only a week before his last day of employment – J. Lee accessed and printed an Excel spreadsheet with a bid for Customer A's construction project that is nearly identical to Sungdo USA's bid but with Hyoungwon's name and logo instead of Sungdo USA's name and logo.  Notably, Hyoungwon's bid was so identical to Sungdo USA's bid that it even reflected the date on Sungdo's bid (March 23, 2023).

82.    The bid also contained estimates of work to be performed by Sungdo USA employees whom J. Lee planned to hire at Hyougwon, including Y. Lee, who had been extensively involved in preparing the bid.   Indeed, Hyoungwon's bid indicates that Y. Lee and other Sungdo employees will perform the same work for Customer A that Sungdo's bid had proposed to be performed by these same employees.

83.     Hyoungwon's bid for the construction project looks nearly identical to Sungdo USA's draft bid because it **is** Sungdo USA's bid.  On information and belief, J. Lee, or someone else acting at his direction, copied Sungdo USA's bid with minimal revisions but replaced Sungdo USA's name and logo with Hyoungwon's. Upon information and belief, Hyoungwon then submitted the bid to Customer A and won the bid, thereby depriving Sungdo USA of potentially millions of dollars in business that it expected to obtain from this project, as well as countless other opportunities that successful completion of this project would have provided.

84.     Moreover, in one final act of misconduct before leaving Sungdo USA's employment, J. Lee attempted to wipe the hard drive of his company-issued desktop computer by resetting the hard drive to its factory settings.  Upon information and belief, J. Lee did so in an attempt to hide his misconduct and to deprive Sungdo USA of its own files and other company information that J. Lee has stored on the hard drive.

### H.     Defendants' Continued Unfair Competition and Further Raiding of Sungdo USA's Workforce

85.     Having secretly set their plan in motion for months before J. Lee's departure from Sungdo USA, Defendants then launched on their scheme to unlawfully replicate  Sungdo's success in the U.S. market by essentially stealing its business – including raiding Sungdo USA's workforce, usurping its business opportunities (including the work that it expected to obtain from Customer A), and

misappropriating its trade secrets and other confidential business information (including Sungdo USA's strategies that J. Lee, Jang, and Y. Lee themselves developed while employed by Sungdo).

86.     For example, within weeks of J. Lee's departure, Defendants successfully lured away Y. Lee, who, upon information and belief, is now performing the same or a similar role at Hyoungwon despite owing non-disclosure and other continued obligations to Sungdo USA in his Employment Agreement governing his employment with Sungdo USA).

87.     Consistent with the plan that Lee announced in his June 16 email, Defendants also lured away Sungdo USA's Senior Procurement Manager Kyungmi Park, who, upon information and belief, is or will be working for Hyoungwon in a competitive role.  Like the other departed employees, Park also owes non-compete and other continued obligations to Sungdo USA in her Employee Non-Competition, Confidentiality and Non-Solicitation Agreement, and, as with Jang, J. Lee purported to waive those covenants to pave the way for her to compete against Sungdo USA at Hyoungwon.

88.     Moreover, also consistent with the plan that Lee's announced to Hyoungwon Korea in his June 16 email, Defendants lured away Sungdo USA's Senior Planning Manager Dong Gyu Lee, who performed the same role at Hyoungwon until he rejoined Sungdo approximately one month later.  Hyoungwon's

employment of Dong Gyu Lee was and is inconsistent with his Employee Non-Competition, Confidentiality and Non-Solicitation Agreement with Sungdo USA (which J. Lee also purported to waive so that he could carry out his plan to hire him for Hyoungwon).

89.     In addition, J. Lee purported to waive the Employee Non-Competition, Confidentiality and Non-Solicitation Agreement of Jeremy Shultz, another Sungdo USA employee whom he also solicited to join Hyoungwon and who initially gave notice of termination of his employment with Sungdo USA before ultimately deciding to stay at Sungdo USA

90.     Defendants' ongoing actions are direct and blatant violations of J. Lee's and Jang's ongoing contractual and other legal obligations.  In clear violation of the non-compete covenant in the Jang Non-Competition Agreement, Jang is engaging in business activity in competition with Sungdo USA within 200 miles of his work location at Sungdo USA's headquarters in Suwanee, Georgia.  And in clear violation of J. Lee's Employment Agreement and applicable law, J. Lee and Jang are competing with Sungdo USA with their knowledge of Sungdo USA's trade secrets and other confidential business information, and they are actually using and disclosing, or are threatening to use or disclose, Sungdo USA's trade secrets and other confidential business information in the course of competing with Sungdo USA on behalf of Hyoungwon.

91.     These clear and unambiguous violations of Defendants' legal obligations have already seriously harmed Sungdo USA in its ability to compete without unlawful interference by Defendants, and Defendants' ongoing scheme of unfair competition threatens Sungdo USA with further immediate harm to its employe relationships, its goodwill, and its trade secrets and other confidential business information.

92.     Without immediate and permanent injunctive relief, Defendants will continue to violate their contractual and other legal obligations and cause irreparable harm to Sungdo USA's operations, in addition to significant monetary damages.  There is no adequate remedy at law for the harm that Sungdo USA has suffered and is continuing to suffer as a direct and proximate result of Defendants' unlawful actions.

## COUNT I
### Breach of Fiduciary Duty
### (against J. Lee and Jang)

93.     Sungdo USA re-alleges Paragraphs 1-92 above, and incorporates them as if fully set forth herein.

94.     Due to the nature of their duties and responsibilities for Sungdo USA, and as employees of Sungdo USA, J. Lee and Jang owed Sungdo USA a fiduciary duty. This included a duty to act in Sungdo USA's best interests, to work solely for

the benefit of Sungdo USA, and to refrain from acting to the detriment of Sungdo USA.

95.    J. Lee and Jang breached their fiduciary duties by the actions alleged in this Complaint, including, without limitation: (a) by failing to act in Sungdo USA's best interests while employed by Sungdo USA; (b) by working for Hyoungwon, a direct competitor of Sungdo USA, while employed by Sungdo USA; (c) by soliciting other Sungdo USA employees (including, without limitation, Y. Lee) to work for Hyoungwon and assisting Hyoungwon in doing the same; (d) by attempting to release other employees from their non-competition and non-solicitation obligations to Sungdo USA so that they could compete with Sungdo USA on behalf of Hyoungwon; and (e) by intentionally failing to pursue a construction project with Customer A on behalf of Sungdo USA and instead usurping that opportunity for Hyoungwon.

96.    As a direct and proximate result of J. Lee's and Jang's breaches of their fiduciary duties, Sungdo USA has been damaged, and continues to be damaged, and J. Lee and Jang have gained and benefited and will continue to gain and benefit.

97.    J. Lee's and Jang's actions were willful and malicious, were intended to harm Sungdo USA, and were in reckless disregard of Sungdo USA's rights and of the consequences to Sungdo USA. Therefore, Sungdo USA is entitled to punitive damages against Lee and Jang to deter such improper conduct in the future.

## COUNT II
### Inducing a Breach of Fiduciary Duty of Loyalty
### (Against Hyoungwon Korea and Hyoungwon USA)

98.     Sungdo USA repeats and re-alleges Paragraphs 1 – 97 above, and incorporates them as if fully set forth herein.

99.     Upon information and belief, Hyoungwon Korea and Hyoungwon USA, acting improperly and without privilege, purposely and with malice and with the intent to injure Sungdo USA, knowingly participated in or induced J. Lee and Jang to breach their fiduciary duties to Sungdo USA.

100.    Upon information and belief, Hyoungwon Korea and Hyoungwon USA knowingly accepted the benefits resulting from J. Lee and Jang's breaches of their fiduciary duties.

101.    As a direct and proximate result of Hyoungwon Korea and Hyoungwon USA's actions alleged in this Complaint, Sungdo USA has been damaged in an amount to be determined at trial.

102.    Upon information and belief, Hyounwon Korea and Hyoungwon USA's actions were willful and malicious, were intended to harm Sungdo USA, and were in reckless disregard of Sungdo USA's rights and of the consequences to Sungdo USA.  Therefore, Sungdo USA is entitled to punitive damages against Hyoungwon Korea and Hyoungwon USA to deter such improper conduct in the future.

<u>**COUNT III**</u>
**Breach of Lee Employment Agreement**
**(against J. Lee)**

103.    Sungdo USA re-alleges Paragraphs 1-102 above, and incorporates them as if fully set forth herein.

104.    J. Lee is party to a valid Employment Agreement governing the terms of his employment as President of Sungdo USA, including covenants requiring J. Lee (a) to refrain from disclosing the company's confidential information to third parties during his employment, (b) to refrain from using or disclosing the company's confidential information following the termination of his employment, (c) to return the company's confidential information (including files, documents, records, and notes) following the termination of his employment, and (d) to refrain from deleting or otherwise destroying the company's confidential information in a form that cannot be recovered.  In addition, the J. Lee Agreement has an implied covenant of good faith and fair dealing.

105.    J. Lee has a continuing obligation to abide by the covenants in the J. Lee Employment Agreement.

106.    The covenants in the J. Lee Employment Agreement are valid and enforceable. They are reasonably necessary for the protection of Sungdo USA's interests in its goodwill, customer and employee relationships, trade secrets and

other confidential information, and they do not impose a greater restraint than is necessary to protect Sungdo USA's legitimate business interests.

107.   Sungdo USA has satisfied all of its obligations under the terms and conditions of the J. Lee Employment Agreement.  All conditions precedent to this action have been performed, excused, or waived.

108.   J. Lee breached, and is continuing to breach, the covenants in the J. Lee Employment Agreement by the actions alleged in this Complaint, including, without limitation, (a) disclosing Sungdo USA's confidential information to Hyoungwon during and following the termination of his employment with Sungdo USA, (b) using Sungdo USA's confidential information (including, without limitation, Sungdo USA's confidential bid terms for Customer A's construction project) to compete against Sungdo USA, (c) retaining, and failing to return, Sungdo USA's confidential information (including, without limitation, Sungdo USA's bid to Customer A that J. Lee incorporated into Hyoungwon's bid and then printed), (d) wiping the hard drive of his company-issued computer, and (e) surreptitiously competing with Sungdo USA and undermining its interests (including, without limitation, attempting to void Jang's and other employees' restrictive covenants) while employed by Sungdo USA in violation of the J. Lee Employment Agreement's implied covenant of good faith and fair dealing.

109.   As a direct and proximate result of J. Lee's breaches of the J. Lee Employment Agreement, Sungdo USA has been harmed through the use and/or disclosure of its trade secrets and other confidential information, loss of its exclusive use of its trade secrets and other confidential information, impairments to its competitive position, loss of business, loss of customer and employee relationship, loss of goodwill, and unfair competition.

110.   Sungdo USA stands without an adequate remedy at law, and, unless restrained by the Court, J. Lee's breaches of the Lee Employment Agreement will continue to cause Sungdo USA irreparable damage and injury.

111.   The threatened harm to Sungdo USA if the Court does not grant such restraint outweighs the risk of harm to J. Lee from such a restraint.

112.   The public interest would not be disserved by the granting of an injunction.

113.   Sungdo USA additionally has been damaged in an amount to be determined at trial.

## COUNT IV
### Breach of Jang Non-Competition Agreement
### (against Jang)

114.   Sungdo USA re-alleges Paragraphs 1-113 above, and incorporates them as if fully set forth herein.

115.   Jang is party to a valid Employee Non-Competition, Confidentiality and Non-Solicitation Agreement that contains various covenants that applied to Jang during his employment with Sungdo USA and/or that continue following the termination of his employment with Sungdo USA, including: (a) a covenant that, during his employment, he would not engage in any business activity which is competitive with Sungdo USA or work for any company which competes with Sungdo USA; (b) a covenant that, for a period of one (1) year immediately following the termination of his employment, he will not engage in any business activity which competes with Sungdo within 200 miles of the facility in which he was engaged by Sungdo USA; (c) a covenant that, during the term of his employment and for a period of one (1) year immediately thereafter, he will not to solicit any employee or independent contractor of Sungdo USA on behalf of any other business enterprise and will not induce any employee or independent contractor associated with Sungdo USA to terminate or breach an employment, contractual or other relationship with Sungdo USA; and (d) a covenant that, for one (1) year following the termination of his employment, he will not directly or indirectly disclose to any person, firm or corporation the names or addresses of any of the customers or clients of Sungdo USA or any other information pertaining to them and will not call on, solicit, take away, or attempt to call on, solicit, or take away any customer of Sungdo USA whom he called or with whom he became acquainted as result of his employment with

Sungdo USA.  The Jang Non-Competition Agreement also includes an implied covenant of good faith and fair dealing.

116.   The purported amendment to the Jang agreement is null and void because the purported amendment was an ultra vires act for which J. Lee had no authority or authorization by Sungdo USA and that was contrary to J. Lee's fiduciary duty to Sungdo USA.  Accordingly, because the purported amendment is null and void, Jang has a continuing obligation to abide by the covenants in the Jang Non-Competition Agreement that continue after the termination of his employment with Sungdo USA.

117.   The covenants in the Jang Non-Competition Agreement are valid and enforceable. They are reasonably necessary for the protection of Sungdo USA's interests in its goodwill, customer and employee relationships, and trade secrets and other confidential information; they contain reasonable limitations as to the time, geographic area and scope of activity to be restrained; and they do not impose a greater restraint than is necessary to protect Sungdo USA's legitimate business interests.  In addition, Jang was employed by Sungdo USA in a role in which he exercised the duties described in O.C.G.A. § 13-8-53(a).

118.   Sungdo USA has satisfied all of its obligations under the terms and conditions of the Jang Non-Competition Agreement.  All conditions precedent to this action have been performed, excused, or waived.

119.   Jang breached, and is continuing to breach, the covenants in the Jang Non-Competition Agreement by the actions alleged in this Complaint, including, without limitation, (a) working for Hyoungwon, a direct competitor of Sungdo USA, during his employment with Sungdo USA, (b) engaging in business activity that competes with Sungdo USA within 200 miles of Sungdo USA's headquarters in Suwanee, Georgia where he worked for Sungdo USA; (c) soliciting and/or inducing, and assisting Hyoungwon and J. Lee in soliciting and/or inducing, Sungdo USA employees to leave Sungdo USA and join Hyoungwon; and (d) surreptitiously competing with Sungdo USA and undermining its interests while employed by Sungdo USA in violation of the Jang Non-Competition Agreement's implied covenant of good faith and fair dealing.

120.   As a direct and proximate result of Jang's breaches of the Jang Non-Competition Agreement, Sungdo USA has been harmed through the use and/or disclosure of its trade secrets and other confidential information, loss of its exclusive use of its trade secrets and other confidential information, impairments to its competitive position, loss of business, loss of customer and employee relationship, loss of goodwill, and unfair competition.

121.   Sungdo USA stands without an adequate remedy at law, and, unless restrained by the Court, Jang's breaches of the Jang Non-Competition Agreement will continue to cause Sungdo USA irreparable damage and injury.

122.   The threatened harm to Sungdo USA if the Court does not grant such restraint outweighs the risk of harm to Jang from such a restraint.

123.   The public interest would not be disserved by the granting of an injunction.

124.   The covenants contained within the Jang Non-Competition Agreement should be extended for the period of time where Jang is found to have been in violation of those covenants.

125.   Sungdo USA additionally has been damaged in an amount to be determined at trial.

## COUNT V
### Tortious Interference with Contractual Relations
### (against all Defendants)

126.   Sungdo USA re-alleges Paragraphs 1-125 above, and incorporates them as if fully set forth herein.

127.   Sungdo USA has a valid and enforceable contractual relationship with Lee by virtue of the J. Lee Employment Agreement.

128.   Sungdo USA has a valid and enforceable contractual relationship with Jang by virtue of the Jang Non-Competition Agreement.

129.   Sungdo USA has valid and enforceable contractual relationships with its other former employees who are now, or were, employed by Hyoungwon (including, without limitation, Y. Lee, Kyungmi Park, and Dong Gyu Lee) by virtue

of their Employee Non-Competition, Confidentiality and Non-Solicitation Agreements or other employment agreements.

130.   Sungdo USA had a reasonable expectation that these contractual relationships would continue and that J. Lee, Jang, and its other employees would comply with the provisions of their respective agreements.

131.   Hyoungwon Korea, Hyoungwon USA, and Jang had knowledge of Sungdo USA's contractual relationship with J. Lee and his obligations under the J. Lee Employment Agreement.

132.   Hyoungwon Korea, Hyoungwon USA, and J. Lee had knowledge of Sungdo USA's contractual relationship with Jang and his obligations under the Jang Non-Competition Agreement.

133.   All Defendants had knowledge of Sungdo USA's contractual relationship with the other departed employees and their obligations under their Employee Non-Competition, Confidentiality and Non-Solicitation Agreements or other employment agreements.

134.   By the acts alleged in this Complaint, Hyoungwon Korea, Hyoungwon USA, and Jang have intentionally interfered with Sungdo USA's contractual relationship with J. Lee; Hyoungwon Korea, Hyoungwon USA, and J. Lee have intentionally interfered with Sungdo USA's contractual relationship with Jang, and

all Defendants have interfered with Sungdo USA's contractual relationship with the other departed employees.

135.  Hyoungwon Korea, Hyoungwon USA, and Jang knew that J. Lee's competition with Sungdo USA while employed by Sungdo USA, use and disclosure of Sungdo USA's confidential information to compete against Sungdo USA, attempted voiding of Jang's and other employees' restrictive covenants, and retention and use of Sungdo USA's confidential bidding information would constitute violations of the J. Lee Employment Agreement.  On information and belief, Hyoungwon Korea, Hyoungwon USA, and Jang nevertheless induced J. Lee to engage in such violations of the J. Lee Employment Agreement.

136.  Hyoungwon Korea, Hyoungwon USA, and J. Lee knew that Jang's working for Hyoungwon during his employment with Sungdo USA, competing with Sungdo USA after his employment within 200 miles of Sungdo USA's headquarters in Suwanee, Georgia, soliciting and inducing (or assisting in soliciting and inducing) Sungdo USA employees to leave Sungdo USA and join Hyoungwon,  disclosing confidential information regarding Sungdo USA's customers (including its confidential bid information regarding Customer A), and surreptitiously competing with Sungdo USA and undermining its interests while employed by Sungdo USA would constitute violations of the Jang Non-Competition Agreement.  On information and belief, Hyoungwon Korea, Hyoungwon USA, and J. Lee

nevertheless induced Jang to engage in such violations of the Jang Non-Competition Agreement.

137. Defendants knew that Kyungmi Park's and Dong Gyu Lee's employment with Hyoungwon following the termination of their employment with Sungdo USA, their use and disclosure of Sungdo's trade secrets and other confidential information, and their competition with Sungdo USA within 200 miles of Sungdo USA's headquarters (where they all worked) would constitute violations of their Employee Non-Competition, Confidentiality and Non-Solicitation Agreements. Defendants also knew that Y. Lee's employment with Hyoungwon in a role in which he will use and disclosure of Sungdo's trade secrets and other confidential information would constitute violations of his employment agreement with Sungdo. Defendants nevertheless induced those employees to engage in violations of their respective agreements.

138. By the acts alleged in this Complaint, Defendants had an improper motive and used improper means in interfering with Sungdo USA's contractual relations without lawful justification or legitimate reason for this interference with those business relationships.

139. As a direct and proximate result of Defendants' tortious interference with Sungdo USA's contractual relationships, Sungdo USA has been harmed through the use and/or disclosure of its trade secrets and other confidential

information, loss of its exclusive use of its trade secrets and other confidential information, impairments to its competitive position, loss of business, loss of customer and employee relationship, loss of goodwill, and unfair competition.

140.   Sungdo USA stands without an adequate remedy at law, and, unless restrained by the Court, Defendants' tortious interference with Sungdo USA's contractual relations will continue to cause Sungdo USA irreparable damage and injury.

141.   The threatened harm to Sungdo USA if the Court does not grant such restraint outweighs the risk of harm to Defendants from such a restraint.

142.   The public interest would not be disserved by the granting of an injunction.

143.   Sungdo USA additionally has been damaged in an amount to be determined at trial.

144.   Defendants' actions were willful and malicious, were intended to harm Sungdo USA, and were in reckless disregard of Sungdo USA's rights and of the consequences to Sungdo USA.   Therefore, Sungdo USA is entitled to punitive damages against Defendants to deter such improper conduct in the future.

## <u>COUNT VI</u>
**Violation of the Defend Trade Secrets Act of 2016 (18 U.S.C. § 1832 *et seq.*)**
**(Against all Defendants)**

145.   Sungdo re-alleges Paragraphs 1-144 above, and incorporates them as if fully set forth herein.

146.   Sungdo USA's confidential and proprietary information includes, without limitation, customer and prospect contact information; confidential information about bidding opportunties; internal analyses of market position, threats, and opportunities; strategic plans for bidding on construction projects; drafts of bids for construction projects; strategic sales and marketing plans; and other business methods, strategies, and plans; and technologies and know-how in construction of semiconductor, high-efficiency and high-capacity lithium-ion battery manufacturing plants.

147.   Sungdo has taken, and continues to take, reasonable efforts to maintain the confidentiality and secrecy of such information.

148.   This information constitutes trade secrets pursuant to the Defend Trade Secrets Act because Sungdo USA derives independent economic value, actual or potential, from this information not being generally known to, and not being readily ascertainable by proper means by, other persons who could obtain economic value from its disclosure or use, and because Sungdo USA has taken reasonable measures to keep such information secret.

149.   Sungdo USA gave J. Lee and Jang access to its trade secrets through their employment with, and performance of responsibilities for, the company.

150.   Sungdo USA's trade secrets contain detailed and specific information about Sungdo USA's strategy to win business opportunities that it has identified (including the opportunity to design and construct Customer A's plant in Cartersville, Georgia).   Such trade secrets, which include the actual bid for the Cartersville project for Customer A, are precisely the types of information that a competitor like Hyoungwon could use to undercut gain a competitive advantage over Sungdo USA.

151.   Defendants have already intentionally, wrongfully, willfully, and maliciously misappropriate Sungdo USA's trade secrets and used and disclosed such trade secrets to compete unlawfully against Sungdo USA.   Unless restrained by the Court, they will continue to threaten to misappropriate such trade secrets.

152.   By virtue of the foregoing, Sungdo USA has demonstrated a likelihood of success and that a balancing of the equities favors the issuance of an injunction against Defendants.

153.   Defendants' misappropriation has caused and will continue to cause irreparable harm to Sungdo USA for which it has no adequate remedy at law. Sungdo USA cannot presently ascertain the exact extent, nature, and amount of such potential injury, which may not stand subject to precise calculation.   Indeed, because successful completion of one large construction project for one customer often opens the door to future opportunities with the same customer or other customers, the loss

of even one project as a result of misappropriation of trade secrets could result in the loss of future projects for years down the road.

154.   As such, monetary damages alone cannot fully compensate Sungdo USA for Defendants' unlawful actions.

155.   Sungdo USA stands without an adequate remedy at law, and, unless restrained by the Court, Defendants' misappropriation will continue to cause Sungdo USA irreparable damage and injury.

156.   The threatened harm to Sungdo USA if the Court does not grant such restraint outweighs the risk of harm to Sungdo USA from such a restraint.

157.   The public interest would not be disserved by the granting of an injunction.

158.   Sungdo USA additionally has been damaged in an amount to be determined at trial.

159.   Defendants' misappropriation of Sungdo USA's trade secrets was and is willful and malicious.  Therefore, Sungdo USA is entitled to exemplary damages under 18 U.S.C. § 1836(b)(3)(C).

## COUNT VII
### Violation of the Georgia Uniform Trade Secrets Act (O.C.G.A. § 10-1-76, *et seq.*)
### (Against all Defendants)

160.   Sungdo USA re-alleges Paragraphs 1-159 above, and incorporates them as if fully set forth herein.

161. Sungdo USA's confidential and proprietary information includes, without limitation, customer and prospect contact information; confidential information about bidding opportunities; internal analyses of market position, threats, and opportunities; strategic plans for bidding on construction projects; drafts of bids for construction projects; strategic sales and marketing plans; and other business methods, strategies, and plans; and technologies and know-how in construction of semiconductor, high-efficiency and high-capacity lithium-ion battery manufacturing plants,

162. Sungdo has taken, and continues to take, reasonable efforts to maintain the confidentiality and secrecy of such information.

163. This information constitutes trade secrets pursuant to the Georgia Uniform Trade Secret Act because Sungdo USA derives independent economic value, actual or potential, from this information not being generally known to, and not being readily ascertainable by proper means by, other persons who could obtain economic value from its disclosure or use, and because the information is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

164. Sungdo USA gave J. Lee and Jang access to its trade secrets through their employment with, and performance of responsibilities for, the company.

165. Sungdo USA's trade secrets contain detailed and specific information about Sungdo USA's strategy to win business opportunities that it has identified

(including the opportunity to design and construct Customer A's plant in Cartersville, Georgia). Such trade secrets, which include the actual bid for the Cartersville project for Customer A, are precisely the types of information that a competitor like Hyoungwon could use to undercut gain a competitive advantage over Sungdo USA.

166. Defendants have already intentionally, wrongfully, willfully, and maliciously misappropriate Sungdo USA's trade secrets and used and disclosed such trade secrets to compete unlawfully against Sungdo USA. Unless restrained by the Court, they will continue to threaten to misappropriate such trade secrets.

167. By virtue of the foregoing, Sungdo USA has demonstrated a likelihood of success and that a balancing of the equities favors the issuance of an injunction against Defendants.

168. Defendants' misappropriation has caused and will continue to cause irreparable harm to Sungdo USA for which it has no adequate remedy at law. Sungdo USA cannot presently ascertain the exact extent, nature, and amount of such potential injury, which may not stand subject to precise calculation.

169. As such, monetary damages alone cannot fully compensate Sungdo USA for Defendants' unlawful actions.

170.   Sungdo USA stands without an adequate remedy at law, and, unless restrained by the Court, Defendants' misappropriation will continue to cause Sungdo USA irreparable damage and injury.

171.   The threatened harm to Sungdo USA if the Court does not grant such restraint outweighs the risk of harm to Sungdo USA from such a restraint.

172.   The public interest would not be disserved by the granting of an injunction.

173.   Sungdo USA additionally has been damaged in an amount to be determined at trial.

174.   Defendants' misappropriation of Sungdo USA's trade secrets was and is willful and malicious.  Therefore, Sungdo USA is entitled to exemplary damages under O.C.G.A. § 10-1-763(b).

## COUNT VIII
### Conspiracy
### (Against all Defendants)

175.   Sungdo USA repeats and re-alleges Paragraphs 1 – 174 above, and incorporates them as if fully set forth herein.

176.   Defendants became members of a combination.

177.   The purpose of this combination was to accomplish an unlawful purpose and/or a lawful purpose by unlawful means.

178.   By the actions alleged in this Complaint, the Defendants conspired by concerted action to breach J. Lee's and Jang's fiduciary duties and contracts, to interfere with Sungdo USA's contractual relations with its other employees, and to misappropriate Sungdo USA's trade secrets and other confidential information.

179.   Upon information and belief, Defendants had a meeting of the minds on this object or course of action and committed one or more overt acts to further the object or course of action.  These overt acts include, but are not limited to: (a) J. Lee's and Jang's commencement of employment with Hyoungwon while still employed by Sungdo USA, (b) stopping work on Sungdo USA's bid to Customer A for the project Cartersville, Georgia, (c) taking, without Sungdo USA's consent, Sungdo USA's s trade secrets and other confidential information (including its bid for the Cartersville project), (d) fraudulently passing off Sungdo USA's bid as Hyoungwon's bid, and (e) attempting to void Sungdo USA's contracts with its employees.

180.   The Defendants are jointly and severally liable for the acts done in furtherance of the conspiracy.

181.   As a direct and proximate result of Defendants' actions, Sungdo USA has been harmed through the use and/or disclosure of its trade secrets and other confidential information, loss of its exclusive use of its trade secrets and other confidential information, impairments to its competitive position, loss of business,

loss of customer and employee relationship, loss of goodwill, and unfair competition.

182.  Sungdo USA stands without an adequate remedy at law, and, unless restrained by the Court, Defendants' conspiracy will continue to cause Sungdo USA irreparable damage and injury.

183.  The threatened harm to Sungdo USA if the Court does not grant such restraint outweighs the risk of harm to Defendants from such a restraint.

184.  The public interest would not be disserved by the granting of an injunction.

185.  Sungdo USA additionally has been damaged in an amount to be determined at trial.

186.  Defendants actions were willful and malicious, were intended to harm Sungdo USA, and were in reckless disregard of Sungdo USA's rights and of the consequences to Sungdo USA.  Therefore, Sungdo USA is entitled to punitive damages against Defendants to deter such improper conduct in the future.

## **REQUESTED RELIEF**

WHEREFORE, Sungdo USA requests that the Court enter judgment in its favor and grant the following relief:

1.  That the Court issue a temporary restraining order, preliminary injunction, and permanent injunction:

(a)        Ordering that Defendants, along with their agents, employers, employees, attorneys and those persons in active concert or participation with them, are enjoined from misappropriating Sungdo USA's trade secrets or other confidential business information (including, without limitation, Sungdo USA's confidential bid materials);

(b)        Ordering that Defendants, along with their agents, employers, employees, attorneys and those persons in active concert or participation with them, are enjoined from interfering with J. Lee's Employment Agreement or Jang's Non-Competition Agreement;

(c)        Ordering that J. Lee is enjoined from being employed by Hyoungwon anywhere in the United States for a period of one (1) year;

(d)        Ordering that Jang is enjoined from being employed by, or other providing services to, Hyoungwon within 200 miles of Sungdo USA's headquarters at 4318 Brogdon Place Cove, Suwanee, Georgia 30024 (the "Restricted Territory") for a period of one (1) year or otherwise providing services to

Hyoungwon in or related to the Restricted Territory for a period of one (1) year;

(e)     Ordering Defendants to identify, account for, and return any and all Sungdo USA property (including, without limitation, trade secrets or other confidential information) in their possession, custody, or control;

(f)     Ordering  Defendants to make available for inspection and imaging any computers, personal data devices, or electronic storage devices on which they have accessed or stored any Sungdo USA property (including, without limitation, trade secrets or other confidential information);

(g)     Ordering Defendants to identify any and all bids submitted by Hyoungwon Korea, Hyoungwon USA, or any of their affiliates to any customer or potential customer in the United States of America since May 31, 2023, including the name of the customer, the date of the bid, and whether the work was obtained by Hyoungwon; and

(h)     Ordering Defendants to refrain from any spoliation of evidence;

2.      That Sungdo USA be awarded compensatory damages in an amount to be proven at trial;

3.      That Sungdo USA be awarded punitive or exemplary damages as determined by the enlightened conscience of the jury;

4.      That Sungdo USA be awarded its costs and attorneys' fees incurred in bringing this action; and

5.      That the Court grant such further relief as it deems just.

Dated: December 29, 2023                    Respectfully submitted,

                                            By: */s/ Daniel P. Hart*
                                            Daniel P. Hart
                                            Georgia Bar No. 141679
                                            dhart@seyfarth.com
                                            Sul Ah Kim
                                            Georgia Bar No. 697119
                                            sakim@seyfarth.com

                                            SEYFARTH SHAW LLP
                                            1075 Peachtree Street, N.E.
                                            Suite 2500
                                            Atlanta, GA 30309-3958
                                            Telephone:   (404) 885-1500
                                            Facsimile:   (404) 892-7056

                                            OF COUNSEL:
                                            David J. Kim
                                            California Bar No. 349802
                                            (*Pro Hac Vice to be filed*)
                                            dakim@seyfarth.com

SEYFARTH SHAW LLP
2029 Century Park East
Suite 3500
Los Angeles, CA 90067-3021
Telephone:(310) 277-7200
Facsimile: (310) 201-5219

*Counsel for Sungdo ENG USA, Inc.*

## **VERIFICATION**

I, Sangjun Roh, the President for Sungdo ENG USA, Inc. declare under penalty of perjury (28 U.S.C. § 1746) that I have read Paragraphs 1-5 and 15-92 in the Verified Complaint and that the facts stated in it are true to the best of my knowledge and belief.

Executed on December 29, 2023.

_____

Sangjun Roh